UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-21030-CIV-MARRA

GENERAL LENDING CORPORATION,

    Appellant,
vs.

JESUS CANCIO and MELISSA CANCIO,

    Appellees.
_____/

**OPINION AND ORDER AFFIRMING DECISION OF THE BANKRUPTCY COURT**

General Lending Corporation ("GLC") appeals the Bankruptcy Court's Final Order Overruling GLC's Objections to Confirmation of Debtors' Third Amended Chapter 13 Plan and Denying GLC's Motion to Dismiss, and Order Confirming Chapter 13 Plan [DE 1; Adv. Pro. No. 10-20820, ECF No. 381 and 384]. The Court has carefully considered the briefs, the entire record on appeal, and is otherwise fully advised in the premises.

**Background**

The Cancios ("Debtors") filed for Chapter 13 bankruptcy relief on April 23, 2010 to prevent the foreclosure of the Debtors' homestead property. The property is subject to three mortgages, a first by Wells Fargo Home Mortgage, Inc., a second also by Wells Fargo Home Mortgage, Inc., and a third mortgage by the Appellant GLC. Debtors did not file their Statement of Financial Affairs or their initial Schedules A through J until June 11, 2010. The case was dismissed for Debtors' failure to file a

plan but was subsequently reinstated.  GLC appealed the order of reinstatement and this Court affirmed the Bankruptcy Court's decision to reinstate.

Since the initial filing of their Schedules, Debtors amended their Schedules six times and filed four Chapter 13 Plans.  The case was heavily litigated and extensive discovery was conducted.  GLC filed a Motion to Dismiss "late in the game based on the debtors being beyond the eligibility requirements under § 109."  DE 11 at 11 of 43.[1]  At that point Debtors were two-thirds of the way through the Chapter 13 process and had maintained their Chapter 13 plan payments for two years.

On March 19, 2012, and April 25, 2012, the Bankruptcy Court conducted an evidentiary hearing on GLC's objections to confirmation of the Debtors' Chapter 13 Plan.  On April 25, 2012, the Bankruptcy Court also conducted a non-evidentiary hearing on GLC's Motion to Dismiss based on ineligibility.

The Motion to Dismiss on grounds of ineligibility was denied.  The Bankruptcy Court found that the Motion to Dismiss was filed so late in the case that the doctrine of laches barred relief.  On April 25, 2012, the Bankruptcy Court concluded on the record:

> issues of eligibility can be raised and are not legally waived until confirmation.  However, the Court also agrees with the debtor that the doctrine of laches applies in this instance.  The debtors would be greatly prejudiced at this point by requiring them to convert to Chapter 11 after two years of litigation on their ability to proceed with their Chapter 13 plan, and having all of this framed in the context of Chapter 13

---

[1] The Motion to Dismiss was filed on March 16, 2012. *See* DE 10 at 11.

> statutory requirements and construct, to now stop everything and cause significant additional expense and perhaps a different focus on issues if the case was converted to 11 would be greatly prejudicial. . . [Y]ou normally look at the debt limits on the filing date, [but] under the facts of this case, I would find that it would be appropriate to look at the facts as they were played out by the time the motion to dismiss was raised.
>
> To say it another way, it would be hypertechnical to allow a motion to dismiss at a point in time when you know Bayview has not filed and is not asserting an unsecured claim and say, no, we just look at a snapshot at the filing date, and now two years later kick the debtors out of Chapter 13.

DE 2-6 at 649-651 of 819; DE 11 at 4; Adv. Pro. No. 10-20820, ECF Nos. 315, 319, 322.

On July 10, 2012, the Bankruptcy Court overruled GLC's objections to confirmation concluding that GLC had failed to show the type of egregious conduct that would prove bad faith and disqualify Debtors from having their Chapter 13 Plan confirmed. DE 11. The Bankruptcy Court made, in part, the following findings and conclusions on the record:

> As to the Plan itself, although it only provides a very small distribution to unsecured creditors, there's no allegation or evidence that the Plan fails to meet the liquidation test under 1325(a)(4), nor are there any allegations or proof that the debtors' income would require larger payments to unsecured creditors, but for GLC's objection, the Chapter 13 Trustee is ready to recommend confirmation.
>
> GLC's case is based on evidence at trial which GLC argues cumulatively establishes the Debtors' lack of good faith.
>
> * * *
>
> I do not find evidence of bad faith, however, in connection with the foreclosure action. The evidence was not sufficient to prove that the Debtors perjured themselves or otherwise acted in bad faith in defending the foreclosure action, and I further find it was not bad faith

to file this bankruptcy case to stop the foreclosure and try to save their home.

* * *

In addressing the alleged wrongdoing in connection with the restitution obligation, the Court finds that this issue is of little or no relevance on the good faith of this case and this plan.

* * *

I agree with GLC that Mrs. Cancio received [at least $9,500] from Aabacus that really represented income to Mr. Cancio. I do not conclude that this procedure was used to avoid restitution obligations.

* * *

The next issue is whether the Debtors under reported their income to the IRS, and if so, was this evidence of bad faith. On this issue the Court finds that the Debtors may have under reported, but there's no evidence that they intentionally filed false returns or that the under reporting was significant enough to demonstrate bad faith... I don't find any intentional under reporting given the debtors' reliance on the W-2's.

* * *

So, while I agree with GLC's argument that there's an inference that there should have been construction earnings if Mr. Cancio was testifying truthfully about these payments being commissions, we're still left with insufficient evidence to establish the amount of income Mr. Cancio may have earned and not reported on his 2007 return, even assuming there were jobs that this individual named Diesel may have referred to him.

* * *

The Court agrees with GLC that income of $6,000 from Aabacus was not included in the 2010 return . . . [and] finds that personal expenses paid from the Pucheco business account should have been reported as gross income on Mr. Cancio's 2010 return. . . Again, however, the amount by which Mr. Cancio under reported passive income from Pucheo was not quantified, and to the extent Mr. Zorrilla attempted to do that by way of post-closing summaries and compilations, the Court is not accepting those . . . into evidence. But once again, to keep this in context, I'm not sitting as a tax court trying an audit of the Debtors' returns. I'm looking at the evidence and its relevance to an overall finding and whether the Debtors filed this case and filed their Chapter 13 Plan in good faith. . . I do not find that the disclosures regarding Pucheco and

the ultimate production of the Pucheco bank statements support a finding of bad faith.

\* \* \*

The Court does not find that Mrs. Cancio intentionally withheld testimony on [the issue of her knowledge about Mr. Cancio's earnings and where he deposited his income] or that her answers were in bad faith.

\* \* \*

[Regarding inaccurate or incomplete financial disclosures in Debtors' schedules and statement of financial affairs] I accept the explanation by Debtors' counsel that this was her error in using the beginning balance of the last prepetition statement . . . and not any evidence of a concealment of a bank balance. . . [I] find that there may have been some under reporting, but not by a material amount.

\* \* \*

[Regarding late disclosures], I strongly disagree and reject GLC's argument that these are quote, "glaring examples," close quote, of the Debtors' bad faith in these proceedings. . .  I find it relevant to look at the assets we are dealing with here to determine what weight, if any, the nondisclosure should be given in looking at the totality of the circumstances. . .  First, I found Mr. Cancio's testimony that he was unaware of these deeds to be credible; second, the uncontroverted evidence is that his mother's house is encumbered by a reverse mortgage and has no equity. . . [S]o the value of Mr. Cancio's interest, which he shares with his sisters, is minimal.

\* \* \*

[Quoting from *In re Weiser*, 391 B.R. 902, 909 (Bkrtcy. S.D. Fla. 2008)]: In *In re Kitchens*,[2] the Eleventh Circuit identified many factors relevant to assessing good faith (or the lack thereof) in a Chapter 13 case, several of which are applicable here.  The primary factors applicable here are "the motivations of the debtor and his sincerity in seeking relief under the provisions of Chapter 13" and "the circumstances under which the debtor has contracted his debts and his demonstrated bona fides, or lack of same, in dealings with his creditors."  In addition, the Eleventh Circuit also noted that a bankruptcy court should consider, among other factors, the substantiality of the proposed repayments and

---

[2]  *In re Kitchens*, 702 F.2d 885, 888 (11th Cir. 1983).

> the dischargeability of the debts. . ." Applying these general principles to the entirely of the facts in this case, the Court finds that GLC has failed to show by a preponderance of the evidence that the Debtors filed this case or proposed their plan in bad faith.

DE 11.

### Standard of Review

"The district court must accept the bankruptcy court's factual findings unless they are clearly erroneous, 'but reviews a bankruptcy court's legal conclusions *de novo.*'" *In re Englander,* 95 F.3d 1028, 1030 (11th Cir. 1996). "Under *de novo* review, [a] Court independently examines the law and draws its own conclusions after applying the law to the facts of the case, without regard to decisions made by the Bankruptcy Court." *In re Brown*, 2008 WL 5050081, at *2 (M.D. Fla. Nov. 19, 2008) (citing *In re Piper Aircraft Corp.*, 244 F.3d 1289, 1295 (11th Cir. 2001)). The Bankruptcy Court's findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of witnesses. Fed. R. Bankr. P. 8013. The findings of a bankruptcy judge are accorded the same weight as the findings of a district judge under Fed. R. Civ. P. 52. A finding is "clearly erroneous" when although there is evidence to support it, the reviewing court upon examining the entire evidence is left with the definite and firm conviction that a mistake has been committed. *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525 (1948). If the lower court's assessment of the evidence is plausible in

light of the record viewed in its entirety, the reviewing court may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.  *Anderson v. Bessemer City*, 470 U.S. 564, 573–574 (1985). Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.  *Id*.  Mixed questions of law and fact are also reviewed *de novo*. *In re Lentek Int'l Inc.*, 346 Fed. Appx. 430, 433 (11th Cir. 2009).

**Discussion**

GLC asserts the following issues for appeal:

1. Whether the Bankruptcy Court erred in holding, without conducting an evidentiary hearing, that the equitable doctrine of laches barred GLC's pre-confirmation challenge.

2. Whether the equitable doctrine of laches was properly applied based upon the equities, the Debtors' bad faith conduct, and public policy considerations where the laches bar to GLC's eligibility challenge effectively legislates into 11 U.S.C. § 109(e), a greater unsecured debt limitation than intended by Congress.

3. Whether the Bankruptcy Court erred in looking beyond the petition date in determining that the Debtors' unsecured obligations exceeded the unsecured debt eligibility limitation of 11 U.S.C. § 109(e) to obtain Chapter 13 bankruptcy relief.

4. Whether the Bankruptcy Court applied the incorrect legal standard in determining the threshold issue of the Debtors' good faith in the Chapter 13 proceedings and in proposing their Third Amended Plan by shifting the burden of demonstrating good faith from the Debtors to GLC.

The first three issues all fall into a broad area of the law, Chapter 13 eligibility, while the fourth issue challenges the Bankruptcy Court's finding of good faith.

Chapter 13 Eligibility

Bankruptcy Code Section 109(e) governs who may be a debtor under Chapter 13.  11 U.S.C. § 109(e).  Section 109(e) limits Chapter 13 relief to individuals with regular income owing secured debts less than $1,081,400 and unsecured debts less than $360,475.00.  Only noncontingent and liquidated debts are included when calculating Chapter 13 eligibility.  Based on § 109(e)'s plain language, courts calculate those debts as of the petition date.  *In re De La Hoz*, 451 B.R. 192, 194 (Bankr. M.D. Fla. 2011).  In this case, Debtors admit that as of June 11, 2010, when taking into account the undersecured claim of Bayview Loan Servicing[3] ("Bayview"), Debtors' unsecured debts exceeded the unsecured debt limitation of $360,475.00 imposed in 11 U.S.C. § 109(e).  *See* Debtor's Memorandum of Law in Response to GLC's Motion to Dismiss, DE 2-6 at 242 of 819.

---

[3] Bayview Loan Servicing eventually waived its deficiency claim against the Debtors post-petition.  DE 10 at 11-16.

Generally, "[t]he eligibility criteria set forth in § 109(e) are specific and restrictive, with monetary amounts established to govern eligibility so as to ensure that those persons for whose benefit the chapter is directed are those who employ its provisions." Alan N. Resnick and Henry J. Sommer, 2 Collier on Bankruptcy ¶ 109.06[1] (16th ed. 2013) at 109-37. Thus, "the eligibility limits of Section 109(e) should be strictly construed." *In re Rios*, 476 B.R. 685, 688 (Bankr. D. Mass. 2012), citing *In re Soderlund*, 236 B.R. 271, 274 (9th Cir. 1999). *See also In re Marchetto*, 24 B.R. 967, 969 (1st Cir. 1982) ("[t]he provisions of Section 109(e) have consistently been strictly interpreted"), citing In re Cronkleton, 18 B.R. 792, 793 (Bankr. S.D. O.H. 1982).

The Eleventh Circuit has not yet addressed whether eligibility under § 109(e) is jurisdictional; however, the majority of courts that have addressed the matter have found that it is not - concluding that the debt limitations define eligibility, but if a creditor fails to raise an objection to a debtor's eligibility timely, the issue may be waived. *See, e.g.*, *Rudd v. Laughlin*, 866 F.2d 1040 (8th Cir. 1989) ("Unlike the statute which grants diversity jurisdiction to district courts only when the required amount is in controversy, . . . the statutes governing the authority of federal courts to hear bankruptcy cases do not limit jurisdiction according to amounts involved. Nor do we believe that 11 U.S.C. § 109 is meant to restrict the jurisdiction granted under these statutes"); *Promenade Nat'l Bank v. Phillips*, 844 F.2d 230, 235-36 n.2 (5th Cir. 1988) (rejecting jurisdictional argument based on § 109 and noting "far-reaching

consequences" of linking subject matter jurisdiction to eligibility requirements); *In re Republic Trust & Sav. Co.*, 59 B.R. 606, 609 & n.1 (Bankr. N.D. Okla. 1986) (debtor's eligibility for relief under § 109 presents a question of substantive law, not subject-matter jurisdiction); *In re Lochamy*, 197 B.R. 384, 385 n.12 (Bankr. N.D. Ga. 1995) (adopting majority view and finding eligibility to be "merely a limitation … [which] may be waived" and to which *res judicata* may apply when a creditor failed to object timely to the debtor's failure to meet the § 109 eligibility requirements); *In re Verdunn*, 210 B.R. 621, 624 (Bankr. M.D. Fla. 1997); *In re Sullivan*, 245 B.R. 416, 418 (N.D. Fla. 1999) ("the question of eligibility may be waived if and when a creditor waits an unreasonable length of time to raise the issue before the court"); *Matter of Phillips*, 844 F.2d 230, 236 n.2 (5th Cir. 1988) ("As stated by the court in *In re Johnson, supra,* 13 B.R. at 346, subject matter jurisdiction of the bankruptcy court comes from 28 U.S.C. § 1471 and 28 U.S.C. § 157, which provide that the bankruptcy courts shall have exclusive jurisdiction of all cases arising under Title 11.  On the other hand, issues pertaining to whether a debtor meets the requirements of § 109(g)(2) only 'determine whether or not the court must dismiss the case.  They are factual or legal questions which the court must determine.  They are the issues raised by the pleadings.  They are defenses not jurisdictional requirements'"); *In re Wenberg,* 94 B.R. 631, 635-37 (9th Cir. 1988), *aff'd,* 902 F.2d 768 (9th Cir. 1990) (holding that eligibility under § 109(e) was not jurisdictional); 2 Collier on Bankruptcy, ¶ 109.01[2] (15th ed. rev. 2005) ("Section 109 is not characterized in

terms of venue or jurisdiction by the statute itself, and it is clear that it is not jurisdictional"); *In re Tatsis,* 72 B.R. 908, 910-11 (Bankr. W.D. N.C. 1987); *In re Kevitch*, 04-32127, 2006 WL 6627818 (Bankr. E.D. Pa. Feb. 8, 2006) ("Since a finding of ineligibility does not render the bankruptcy court without jurisdiction, the court has some latitude in determining the appropriate relief").  The majority of courts would therefore find unpersuasive GLC's argument that the laches bar imposed by the Bankruptcy Court to GLC's eligibility challenge effectively eliminated a statutory condition of confirmation.  This Court aligns with the majority view.  On this issue, the Bankruptcy Court stated,

> The case was filed in April of 2010.  There were delays caused by dismissal of the case and then later reinstatement of the case. Schedules were filed in June and amended in July.  There have been subsequent amendments, but the June or July or both of those schedules did include the Bayview debt which I'll refer to in a minute.
>
> GLC filed its objection to confirmation on December 13th, 2010, did not raise the debt limit eligibility issues at that time nor at any time during the period between . . . December 2010 and March 16th, 2012. During that time there's been, and the record will certainly reflect this, substantial discovery and numerous hearings dealing with the main thrust of GLC's objection which is based on alleged under statement of income and other alleged intentional omissions or inaccuracies in the debtor's schedules all relating to the plan and the disposable income that the debtors purport to devote to the plan. . .
>
> The Court . . . agrees with the debtor that the doctrine of laches applies in this instance.  The debtors would be greatly prejudiced at this point by requiring them to convert to Chapter 11 after two years of litigation on their ability to proceed with their Chapter 13 plan, and having all of this framed in the context of Chapter 13 statutory requirements and construct, to now stop everything and cause significant additional expense and perhaps a different focus on issues if

the case was converted to 11 would be greatly prejudicial. . .

DE 2-6 at 647-49 of 819.

Laches arises after an unreasonable and inexcusable delay, to the prejudice of the defendant. *In re Gold*, 375 B.R. 316, 334 (Bkrtcy. N.D. Tex. 2007) citing Am. Jur. 2d Equity § 149 n.89. The principle that the passage of time can preclude relief has deep roots in the law. "It is well established that laches, a doctrine focused on one side's inaction and the other's legitimate reliance, may bar long-dormant claims for equitable relief." *City of Sherrill, N.Y. v. Oneida Indian Nation of New York*, 544 U.S. 197, 217 (2005). The United States Supreme Court cited cases from the mid–1800s for this principle, indicating that this is, indeed, an ancient principle of law. "[C]ourts of equity act upon their own inherent doctrine of discouraging, for the peace of society, antiquated demands, refuse to interfere where there has been gross laches in prosecuting the claim, or long acquiescence in the assertion of adverse rights. Long acquiescence and laches by parties ... are productive of much hardship and injustice to others, and cannot be excused but by showing some actual hindrance or impediment ... which will appeal to the conscience of the chancellor [the court]." *Badger v. Badger*, 2 Wall. 87, 69 U.S. 87, 94–95 (1864).

The Supreme Court has articulated that the laches defense bars a plaintiff from maintaining a suit "if he unreasonably delays in filing a suit and as a result harms the defendant." *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 121–122 (2002). What is deemed "unreasonable" in terms of the delay depends on

the circumstances of the particular case. *Altech Controls Corp. v. E.I.L. Instruments, Inc.*, 33 F. Supp. 2d 546, 553 (S.D. Tex. 1998). A laches defense requires a showing of "(1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." *See Id*. (citing *Kansas v. Colorado*, 514 U.S. 673, 687 (1995)). *See also, In re King*, 463 B.R. 555, 570 (Bankr. S.D. Fla. 2011).

GLC's delay in asserting Debtors' ineligibility under Chapter 13 was clear from the record. GLC proffers that the reason for its delay in objecting on the grounds of ineligibility was because the Debtors' ineligibility was not readily apparent on the schedules, and because counsel was focused on establishing the alleged bad faith and dishonesty of the debtors by examining their income and expenses. As a result, GLC did not focus on the eligibility issue. At that point, the Bankruptcy Court was familiar with the history of the case, and it understood the effects converting the case from a Chapter 13 to a Chapter 11 at that late date would have on the proceedings and on the Debtors. Thus, the Bankruptcy Court's historical and institutional knowledge was sufficient for it to conclude that there was a lack of diligence on the part of GLC, and that there would be prejudice to the Debtors by a late conversion to Chapter 11. Hence, there was no error in the Bankruptcy Court failing to hold an evidentiary hearing. Even under a *de novo* review, this Court finds no error in the Bankruptcy Court's denial of GLC's motion to dismiss.

Other courts have applied the doctrine of laches where the movant had ample opportunity to make its motion but slept on its rights, and where the granting of the

relief sought would have caused great prejudice to the respondent.  *See, e.g., Ivani Contracting Corp. v. City of New York*, 103 F.3d 257, 260 (2d. Cir.), *cert. denied*, 520 U.S. 1211 (1997) (laches bars relief when the movant is "guilty of unreasonable and inexcusable delay that has resulted in prejudice to the [respondent]" (quoting *Goodman v. McDonnell Douglas Corp*, 606 F.2d 800, 804 (8th Cir. 1979), *cert. denied*, 446 U.S. 913 (1980), and citing *Gardner v. Panama R.R. Co.*, 342 U.S. 29, 30-31 (1951)); *see also In re Tishler*, 201 B.R. 608, 613 (Bankr. D. Conn. 1996) ("[a] claim of laches requires the court to examine the equitable circumstances peculiar to each case to determine whether the plaintiff in asserting her rights was guilty of unreasonable delay that prejudiced the defendants"); *Peterson v. Atlas Supply Corp. (In re Atlas Supply Corp.)*, 857 F.2d 1061, 1063 (5th Cir. 1988) (bankruptcy court did not abuse its discretion in concluding that by waiting more than one year before moving to dismiss chapter 7 case, deceased shareholder's representative "forewent her right to complain that the bankruptcy petition was not authorized by the corporation"); *Alexander v. Farmers' Supply Co. (In re Farmers' Supply Co.)*, 275 F. 824, 826 (5th Cir. 1921) ("if [the minority shareholder] had the right to defeat the voluntary petition in bankruptcy filed in the name of the [debtor] because there was no corporate action authorizing the institution of the proceeding, he lost that right by his [4 month] silence and inaction"); *In re I.D. Craig Service Corp.*, 118 B.R. 335, 337 (Bankr. W.D. Pa. 1990) (where board of directors waited more than one year before objecting to president's lack of authority in filing chapter 11 case that was later

converted to chapter 7, and where board members actively participated in numerous proceedings during case, including adoption of corporate resolution to retain counsel, their motion to dismiss case was barred by doctrine of laches); *In re Morton*, 43 B.R. 215, 220 (Bankr. E.D. N.Y. 1984) (motion filed almost one and one-half years after the debtor filed her petition while information upon which movant bases its motion was available shortly after the debtor filed her petition would normally call for invocation of the doctrine of laches).

GLC also argues it was reversible error for the Bankruptcy Court to note that at the time of the motion to dismiss, the Bayview undersecured debt was negotiated and waived, bringing Debtors within the eligibility requirements.  This Court does not agree.  The Bankruptcy Court was merely considering all of the facts and circumstances of the case in balancing the equities.  It was not deciding eligibility from beyond the petition date.

### Good Faith

Chapter 13 imposes a requirement of good faith both in the filing of the bankruptcy case and in the proposal of the Chapter 13 Plan.  The requirement that the Chapter 13 Plan be proposed in good faith is contained in § 1325(a)(3) which states the requirement that "the plan has been proposed in good faith and not by any means forbidden by law."  The requirement that the Chapter 13 case itself be filed in good faith is determined on a case-by-case basis upon a consideration of the totality of the circumstances.  *In re Kitchens*, 702 F.2d 885, 888 (11th Cir. 1983).

GLC argues that laches should not have been afforded to Debtors because they do not have "clean hands."  GLC asserts that the Debtors were not honest or willing to make a full disclosure and therefore did not act in good faith because they frustrated GLC's efforts to accurately evaluate and determine their financial condition and affairs.  GLC also argues that the Bankruptcy Court erred by improperly shifting the burden of demonstrating good faith (or lack thereof) from the Debtors to GLC.  As proof of bad faith, GLC points out that the Bankruptcy Court expressly found that the Debtors (a) failed to report all of their income; (b) failed to identify a business bank account which one of the Debtors was using to pay personal expenses; (c) had under reported their income to the IRS; and (d) were evasive and not credible in their testimony that they paid $24,000 in commissions in one year to a person named Luis Figueroa who referred construction work to one of the Debtors but where the Debtors claimed to have no corresponding income for those construction jobs.  The Bankruptcy Court determined that the Cancio's were "basically honest debtors for purposes of seeking Chapter 13 relief."

A finding related to good or bad faith is a "finding of fact reviewable under the clearly erroneous standard."  *In re Saylors*, 869 F.2d 1434, 1438 (11th Cir. 1989) (citing *Downey Sav. and Loan Ass'n v. Metz (In re Metz)*, 820 F.2d 1495, 1497 (9th Cir. 1987); *Public Finance Corp. v. Freeman*, 712 F.2d 219, 221 (5th Cir.1983)).

In *In re Kitchens*, 702 F.2d 885, 888-89 (11th Cir. 1983), the Eleventh Circuit Court of Appeals enumerated a nonexclusive list of factors that a bankruptcy court

should consider in making a determination of good faith.  In the present case, the bankruptcy court expressly stated that it considered these factors in determining that Debtors proposed their plan in good faith.  The court found that at least three of the factors favoring a conclusion of good faith was present: (1) the amount of the Debtors' income from all sources; (2) the motivations of the Debtors and their sincerity in seeking relief under Chapter 13; and (3) circumstances under which the Debtors had contracted their debts and their demonstrated bona fides or lack of same, in dealings with their creditors.  While the Bankruptcy Court noted times when Debtors were either not honest or not credible, the Bankruptcy Court carefully weighed the various factors and, based on the lack of any evidence of fraud or misdealing, and based on the credibility of the Debtors, concluded that the Debtors acted in good faith.  For example, the Bankruptcy Court held, "the Court finds that the Debtors may have under reported, but there's no evidence that they intentionally filed false returns or that the under reporting was significant enough to demonstrate bad faith."  DE 11 at 16 of 43.  The Bankruptcy Court was in the best position to judge credibility and weigh the evidence.  This Court cannot conclude that the Bankruptcy Court's finding was clearly erroneous.[4]

---

[4] The Court also rejects GLC's assertion that the Bankruptcy Court shifted the burden of proof of demonstrating good faith to it.

**Conclusion**

This Court concludes that the Bankruptcy Court correctly overruled GLC's Objections to Confirmation of Debtors' Third Amended Chapter 13 Plan and Denied GLC's Motion to Dismiss, and Order Confirming Chapter 13 Plan [DE 1; Adv. Pro. No. 10-20820, ECF No. 381 and 384].  Accordingly, it is **ORDERED AND ADJUDGED** that the orders on appeal are **AFFIRMED**.  This case is **CLOSED**, and all pending motions are DENIED as moot.

**DONE AND ORDERED** in Chambers at West Palm Beach, Florida this 27th day of January, 2014.

_____
KENNETH A. MARRA
United States District Judge